0756337 Cohen v. Lopez. Good morning, Your Honors. May it please the Court, my name is Linda Conway. I am counsel for Appellant Armand Cohen, the Chapter 13 trustee. This Court has spoken. In the case of Fulcrod, this Court determined that claims modified by a plan of reorganization are not to be paid by a debtor directly. The Code Chapter 12 that was at issue in the Fulcrod case did not implicitly or explicitly authorize a debtor to make direct payments. In light of the Court's holding in Fulcrod, the Court should reverse the decision of the Bankruptcy Court as well as the Bankruptcy Appellate Panel in this case. Was that determination in Fulcrod necessary for decision, or was it dicta? Well, the dicta portion discusses that there are some claims that could be paid by a debtor, even though they are impaired. The Ninth Circuit determined that that statement was not supported by statute and that it was not necessary to the BAP's decision in Fulcrod. It was not necessary? That's correct. Now, why should we be bound by Chapter 12 dicta in the Chapter 13 proceeding? The statute at issue in Chapter 12 is identical to the statute at issue here in Chapter 13. The two chapters are nearly mirror images of each other. In fact, the Fulcrod Court looked to Chapter 13 for guidance in determining the statute under Chapter 12. If you look at Section 1322A, the language is identical. And if you look at 13, it's identical to 1322A. If you look at 1226C, that language is identical to 1326C. The only difference in the language appears at Section 1225A5B2. And that portion of the code, in addition to Section 1226C, was where the debtor in Fulcrod argued that the code implicitly authorized him to make payments directly to creditors. And the court rejected that notion, saying that nothing in Chapter 12 implicitly or explicitly authorizes the debtor to make direct payments on claims impaired. Well, you know the answer that the BAP gave, that the 12 was different from 13, and they distinguish what happened under 12 from what happened under 13. So you interpret the statute slightly differently. You would agree they had different types of bankruptcy and different things required, wouldn't you? I would agree with that, that they're very similar chapters. And so we can look to Chapter 12 for guidance in interpreting Chapter 13 and in the reverse. The one distinction that I was leaning toward in my discussion of 1225A5B, which was relied upon by the debtor Fulcrod, was that that provision actually has language that is different than Chapter 13, and that says that the payments are dispersed by the trustee or the debtor. That provision is not in Chapter 13. So, in fact, Chapter 13 is even less permissive than Chapter 12, and Fulcrod should apply in this instance. Who were the creditors in Fulcrod? The opinion didn't really say. From the BAP opinion in this case, it appeared that they were farm mortgage creditors whose claims were being made. I'm sorry, they were what? Farm mortgage creditors. In contrast, these are residential mortgages. That's correct. Doesn't that make a difference? A modification is a modification. Under 1322A5, yes, residents, that is the debtor's principal residence, is prohibited from modification. But under 1322B5, there is that provision notwithstanding Section 1322B2. The debtor is allowed to cure and maintain the plan payment or the mortgage payment. They're allowed to cure the arrearages and maintain the post-petition payments. And the trustee's contention is that is a definition of modification in itself. The notwithstanding language shows that this is a modification. Were these creditors, these mortgagees, I guess, were they impaired creditors? The trustee's contention is that they were because the debtor proposed to pay the arrears as well as maintain the current payments post-petition. And as a result of this case right here. Why are they impaired? In what way are they impaired? Because their rights are modified. Their right to accelerate is modified, but that doesn't count, right? I think it does because There is an exception for the right to accelerate the residential mortgage. I don't know where that exception would be. If we look to the definition of modification that is contained in Rake v. Wade, there is a host of rights that are listed that show a modification by the cure and maintain provision. Rake actually defined a modification in an instance just like this. Speaking of Rake, Rake has basically been overruled, hasn't it? Or superseded? Only the one provision about the interest. The footnote remains unchanged that I'm referring to, but the 1322E did overrule Rake's determination of how you calculate interest on the arrears of a claim. So really the definition is still valid. One other point I'd like to make on the modification is the courts below discussed that because the mortgages are in a special statutory category, this may be a modification, but it's a permissible modification. And the trustee's point here is that only a permissible modification would result in a confirmable plan. A modification that is not permissible would not result in a confirmable plan. So the distinction that it's permissible or non-permissible is irrelevant. A modification is a modification. And the other point the trustee would like to make is that the plain meaning of the statute, the sections of the statute involved after the enactment of the Bankruptcy, Abuse and Prevention and Consumer Protection Act of 2005 makes it very clear that the trustee is to make the payments under the plan. Section 1322A1 provides that the payments are to be submitted to the supervision and control of the trustee. 1326A1A was modified by what we call BAP-CEPA, and it provides that the debtor shall make the payments proposed by the plan to the trustee. That is new language. The provision that the payments be made to the trustee was not in this section before its amendment. And in this section, at subsection B and C, Congress specifically set out two exceptions to payments to the trustee. So the trustee's reading is that all payments must be made to the trustee with the statutory exceptions created by Congress. These were the exceptions created. Congress obviously knows how to make exceptions and no further exceptions. I understand that direct payments to the mortgagees before 2005 had been, in the discretion of the court, had been made for some 25 years. It had been a pretty well-established practice. You're arguing that because the modifications of the 2005 Act were put in B and C, that long-term practice was changed so that direct payments to mortgagees on real estate was no longer allowed. Isn't that rather a radical reading of an amendment which, from what I've seen, was sought by the auto finance industry that allowed direct payment to chattel mortgagees? Isn't it a radical reading saying that allowing direct payments to auto finance companies means that only auto finance companies can get direct payments now? And a 25-year tradition of allowing courts to permit direct payments to mortgagees, real estate mortgagees, is canceled. I mean, if Congress had meant to do that, it's very easy to do. This amendment would say only payments to personal property mortgagees or personal property creditors can be made, semicolon. The prior practice of allowing direct payments to real property mortgagees is no longer permissible, period. But they didn't say that. They opened up direct payments to personal property mortgagees. You're saying because they did open it up to personal property mortgagees, they impliedly canceled the 25-year practice which had obtained earlier. Is that correct? That's correct. The practice is, as the court mentions here, in the district in which this case arises. But that's not the practice throughout the country. There are divisions and districts where the mortgage payments are made through the trustee. So the practice here is to make direct payments on post-petition payments. That's different than other places. But Congress can set out exceptions, and it did. And we should apply the plain meaning of the statute. Section 1326C says that the trustee shall make the payments unless the order confirming the plan or the plan provides otherwise. Well, the plan can provide otherwise, but it seems to the trustee that those payments can only be those specific exceptions that Congress has now set out. And 1326A1 was amended to provide specifically that the payments are to be made to the trustee. So it seems to have closed that gap and narrowed what payments can actually be made by the debtor to foreclose those payments that had traditionally been made. And if the court has no further questions, I'd like to reserve the balance of time for rebuttal. Thank you, Ms. Connelly. Thank you. May it please the Court. My name is Bruce White. I represent the debtor, Rudy Lopez. I'm sure the Court is familiar with the facts in this case. This is a very basic, straightforward Chapter 13 case. Mr. Lopez fell behind on his mortgage payments. He'd worked for a grocery store for 20 years. He opened a business. Business failed. He used the mortgage payments, used his income to try to keep the business going. He failed to make the mortgage payments. Business failed. The house was in foreclosure. Instead of losing his house, he came and he filed a Chapter 13. Basically, his plan provided that he was to pay the arrears on his first and his second property taxes through the arrears through the Chapter 13 plan, and he was to make the continuing post-petition mortgage payments directly to the lenders. We set forth in our brief, that had been the practice in the Central District for 20, 25 years. In fact, the Central District has a standard Chapter 13 plan that is mandatory in the District and is set forth in the brief. There is a specific form on that form plan that says you check a box whether you are going to make the post-petition payments directly to the lender or you're going to make them through the Chapter 13 trustee. You have that option. And trustees can take a look at that form and know what their fees may or may not be in accepting or not accepting the position. Yes, sir. Yes. But that's been the form for years and years. And as we set forth, even after the BAP CPA was passed, came into effect in October of 2005, the Central District, after taking into consideration the new law, had a review process where they discussed this with lawyers, the Chapter 13 trustee, and I think the bankruptcy judges had even an input into the new plan, and basically the plan was not changed. The plan remains the same as far as still having that box where you can check, where you can make the payments directly to the lender or make them through the Chapter 13 trustee. I think Judge Albert was the bankruptcy judge in this matter. I believe he basically summed the case up in saying the issue in this case is really twofold. Number one, has the Central District been doing everything wrong for the last 25 years? Number one. And the second issue was did BAP CPA change the procedure of what they've been doing before? And the judge did a very ‑‑ took an exhaustive approach, looked at everything, and determined that the Central District had been doing nothing improper for the last 20 or 25 years, that the code specifically provides for the debtor to make direct payments if he chooses to, and then ‑‑ If he chooses to with the court's permission. That's correct. Under the court's discretion. The court can look at all the circumstances and determine whether, in its discretion, he should make the direct payments and cut the trustee out of 10%. Well, I would agree with Your Honor that the court does have the discretion. Are you aware of other cases where the trustees have objected to this? I know you say it's the standard practice, but is this a new problem that has arisen with this trustee objecting, or is this a ‑‑ As far as I know, this is the only one. And as I say, in the Central District, it's been this way for 20 years. The Central District is a pretty large district. The Los Angeles Division of the Central District still allows direct payment. The Riverside San Bernardino Division of the Central District still allows direct payments. And up until this case, the Orange County Division of the Central District permitted direct payments. Do you know what the practice is in other districts? I'm not specific. I know in the Southern District, San Diego, they allow direct payments. And it's my understanding that most of the districts, at least in California, allow direct payments. Do you know any districts that don't allow it? I believe there are ‑‑ I'm not sure how many, but I think I read somewhere it's between 50 or 60% of the districts in the United States require the direct payments to the Chapter 13 trustee. Okay. Thank you. The ‑‑ as I said, the court looked at prior to BAP CPA, then they looked at after BAP CPA. And it's our position that BAP CPA did not make any changes that changed the ‑‑ that now required the payments to go directly through the Chapter 13 trustee. There were some minor amendments, and as the court pointed out, that was mainly for personal property. As the court pointed out, if Congress wanted to specifically set forth that the direct payments were no longer permitted, they certainly could have. Specifically, they failed to amend 1326C, which specifically has the language in there. The court has no more questions. I don't think so. Thank you. Thank you. Mr. Wright. Ms. Connelly, back to you. The argument continues to be made that this has been the practice for 20, 25 years in the Central District of California. But all we need to do is look to the decision in Enrique Guevara that came out this summer, which is an opinion from the Ninth Circuit. It's not cited in the trustee's brief, and I have an additional citation for the court, if you'd like it. It's 541F3 868. And in that case, we learned that it's not business as usual anymore. That court reinterpreted disposable income in light of the changes enacted by BAP CPA and noted that the textual changes represent a deliberate departure from the old disposable calculation. Does it address this problem? It does not. I bring it up mainly for the plain language argument and to point out that things aren't the same after BAP CPA. This court can look to the plain language of the statute, and we don't need to do business as usual anymore. That the practice has been routine does not comport with the law as it has been amended. The plan payments are to be made to the trustee. The trustee is to disperse those payments to creditors. The debtor should not be permitted to make direct payments to creditors. You know, I hear you, but, you know, the old saying that a page of history is worth a volume of logic, it's sort of surprising that this would be the practice in bankruptcy court for years and years, that the BAP would uphold it, and furthermore, that the BAP judge who wrote it, who's a former law professor who teaches bankruptcy, would come to this conclusion. And it's sort of like everybody's out of step, but you, you know, it's... There are, in response to the court's question to Mr. White, there are divisions or districts within California that do require that the payments be made to the trustee. The Eastern District does require that the payments be made, and if you look to the court, the case cited in the trustee's brief in Ray Perez... Now, you say they require it. They don't permit any exceptions, or is that just... I don't know if they permit any exceptions, but the practice is that the payments are to be made through the trustee. A couple other points that I'd like to make is that as far as trustee compensation, the compensation is to be determined by the attorney general. Congress specifically excluded any discretion by the court to determine compensation for the standing trustees pursuant to Section 326B. The court should not inject itself into determining compensation by allowing direct payments or not allowing direct payments. The code should be applied as written. There are no exceptions for trustee payments. None should be read into the statute, and the trustee contends that Fulcrot is binding and should be determinative in this case. If the court has no further questions. Thank you, Madam. Thank you. Thank you. Thank you very much. Thank you, Mr. Conway. Mr. White, thank you, too. The case has just argued. It's submitted. We'll stand at recess until the day.
judges: Noonan, Silverman, Bea